OPINION
{¶ 1} Appellant, Hollis Rosenberger, appeals from a judgment of the Geauga County Court of Common Pleas, granting a divorce to appellee, James Rosenberger, and dividing the parties' property. For the reasons that follow, the judgment is affirmed in part, reversed in part, and remanded.
 {¶ 2} By way of background, the parties were married on January 30, 1988. No children were born as issue of the marriage. Appellee is the sole shareholder and owner of the Chagrin Valley Athletic Club ("CVAC"), which is located in Bainbridge, Ohio. Appellant was employed by the CVAC. The trial court's valuation and division of the CVAC is the central focus of appellant's appeal.
 {¶ 3} On March 22, 2002, appellee filed a divorce complaint with the Geauga County Court of Common Pleas. The complaint sought a divorce, a division of the parties' marital property, and reasonable attorney fees.
 {¶ 4} Appellant filed a timely answer and counterclaim. The counterclaim requested a divorce, an equitable division of marital property, permanent and temporary spousal support, and reasonable attorney fees.
 {¶ 5} The majority of the marital property was divided in a non-adversarial manner according to various agreements of the parties. However, the parties were unable to agree upon a value for the CVAC, or the manner in which the CVAC should be divided. As a result, this matter proceeded to a three-day bench trial, commencing on June 9, 2003.
 {¶ 6} During trial, appellee testified that he purchased the CVAC on February 10, 1996. The purchase price of the CVAC was approximately $1,712,613. Appellee stated that, at the time of purchase, the CVAC was not financially profitable; however, due to the implementation of his management structure and marketing strategies, the business became a lucrative operation.
 {¶ 7} Appellee further testified that just prior to closing the purchase of the CVAC, appellant's mother, Carolyn Hall ("Ms. Hall"), offered to pay the $380,000 down payment on the CVAC. Appellee stated that Ms. Hall gifted the $380,000 and these funds were applied toward the down payment.
 {¶ 8} Appellee testified that he and appellant each held individual promissory notes that were payable to the parties by the CVAC. Each party was entitled to receive annual interest on the principal amount due. The parties stipulated to the terms of the notes and the principal balances due at the time of trial.[1] Specifically, appellee's note was dated March 1, 1999, and the principal amount due was $1,130,050. No payments of principal had been made on appellee's note. Accordingly, appellee could receive an annual interest payment of $90,404.
 {¶ 9} Appellant's note was dated January 1, 1999, and the principal amount due was $195,000. Three payments of principal reduced the note's principal balance to $187,400. Appellant was entitled to annual interest payments at the prime rate.
 {¶ 10} Moreover, appellee testified that following the parties' separation, they had agreed to file separate income tax returns in 2002. Appellee stated that he had received an income tax refund for the 2002 tax-year.
 {¶ 11} Appellant testified that she was employed by the CVAC. Appellant acted as an office manager and she was responsible for accounts payable, accounts receivable, payroll, human resources, and the administration of the 401(K) plan and health insurance plans. She further testified that her mother, Ms. Hall, had gifted her $380,000 and that these funds were used for the CVAC's down payment.
 {¶ 12} With respect to the valuation of the CVAC, appellee presented the expert witness testimony of Loree Weiss Connors ("Connors"). Connors testified that her valuation of the CVAC employed the market approach valuation method.[2] Connors' application of the market value method resulted in a final value of approximately $3,823,500, as of June 30, 2001. In arriving at this final value, Connors testified that she considered the parties' notes as the CVAC's paid-in-capital, rather than loans to the CVAC, because the CVAC had made only minimal payments on the notes' principal.
 {¶ 13} Appellant's expert witness, Robert Greenwald ("Greenwald"), testified that his valuation of the CVAC employed the discounted future earnings method.[3] Greenwald testified that the final value of the CVAC, using the discounted future earnings method, was $4,250,000, as of December 21, 2000. In doing so, Greenwald stated that he considered the parties' notes as debts of the CVAC and the personal assets of the parties.
 {¶ 14} Following trial, the court issued its judgment entry and its findings of fact and conclusions of law. First, the trial court granted a divorce based upon the parties' incompatibility. The trial court's judgment entry concluded that "[appellee] shall maintain 100% ownership of CVAC and pay to [appellant] as a distributive award the sum of * * * ($1,854,952.75), representing her one-half (1/2) interest in CVAC, including the rental properties and the two (2) notes receivable aspaid-in capital contributions." (Emphasis added.) The court's conclusions of law stated:
 {¶ 15} "[Appellee] should pay to [appellant] her one-half (1/2) interest in CVAC, including the rental properties and the two (2) notes receivables as loans, as follows:
 {¶ 16} "$4,250,000 less $563,594.50 (capital gains tax)
 {¶ 17} "plus the equity in the rental properties of $23,500,
 {¶ 18} "divided by 2 = $1,854,952.75." (Emphasis added.)
 {¶ 19} The court further determined that appellee was entitled to his 2002 income tax refund.
 {¶ 20} On January 6, 2004, appellant filed a motion for a nunc pro tunc judgment entry. Appellant's motion requested a corrected judgment entry based upon alleged inconsistencies between the trial court's judgment entry and its conclusions of law. In particular, appellant noted that the court's findings of fact stated, "[t]he loans to the parties are properly treated as loans to the parties." Appellant maintained that the trial court meant to state that the "the loans from the parties are properly treated as loans from the parties." Appellant also maintained that an additional inconsistency was present, as the court's judgment entry considered the notes to be paid-in-capital contributions, while the court's conclusions of law considered the notes to be loans to the CVAC. Ultimately, appellant concluded that this inconsistency resulted in the court's failure to divide the notes in an equitable manner.
 {¶ 21} Furthermore, appellant's motion maintained that the court's findings of fact determined that Ms. Hall had gifted appellant $380,000 to assist in the purchase of the CVAC. Appellant argued that despite this finding, the trial court failed to issue a distributive award to appellant in the amount of $380,000, to account for her separate property interest in the CVAC.
 {¶ 22} Following appellee's response, the court issued a judgment entry denying appellant's requested nunc pro tunc judgment entry. Regarding the parties' notes, the court stated that "[t]he Court meant to state that they were loans from the parties to be treated as such; however, the Court agrees with [appellee's] argument that the various matters addressed by [appellant] are not subject to treatment in a nunc pro tunc entry."
 {¶ 23} Appellant filed a timely notice of appeal and now sets forth the following five assignments of error for our consideration:
 {¶ 24} "[1.] The Trial Court erred and abused its discretion when it failed to equitably divide the parties' accounts receivable.
 {¶ 25} "[2.] The Trial Court erred and abused its discretion when it treated the parties' accounts receivable as paid in capital.
 {¶ 26} "[3.] The Trial Court erred when it deducted speculative capital gains taxes from the value of the CVAC.
 {¶ 27} "[4.] The Trial Court erred when it failed to award the Appellant her Separate Property.
 {¶ 28} "[5.] The Trial Court erred when it failed to award the Appellant one-half of the Appellee's 2002 income tax refunds."
 {¶ 29} We will first set forth the general standard of review which is applicable to each assignment of error. A trial court is given broad discretion in its division of marital assets. Cherry v. Cherry (1981),66 Ohio St.2d 348, paragraph two of the syllabus. Accordingly, as a reviewing court, our inquiry is limited to whether the trial court abused that discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 30} For the sake of clarity, we will address appellant's assignments of error out of order. Under her fourth assignment of error, appellant maintains that the court erred by failing to award her a separate property interest in the $380,000 gift from Ms. Hall. Appellant claims that Ms. Hall's gift to her, which was used as a down payment for the CVAC, remained her separate property and, therefore, should not have been included as part of the marital property division of the CVAC.
 {¶ 31} The trial court's judgment entry clearly establishes that its division of the CVAC was a distributive award. Pursuant to R.C.3105.171(E)(1), "[t]he court may make a distributive award to facilitate, effectuate, or supplement a division of marital property." A distributive award represents "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support." R.C. 3105.171(A)(1).
 {¶ 32} Pursuant to R.C. 3105.171(A)(3)(a)(i), marital property is defined as "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage[.]" However, marital property does not include any separate property. R.C. 3105.171(A)(3)(b).
 {¶ 33} R.C. 3105.171(A)(6)(a)(vii) defines separate property as follows:
 {¶ 34} "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 35} "Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage andthat is proven by clear and convincing evidence to have been given toonly one spouse." (Emphasis added.)
 {¶ 36} Pursuant to R.C. 3105.171(A)(6)(a)(vii), it was appellant's burden to prove, by clear and convincing evidence, that Ms. Hall had gifted the money solely to her. Although Ms. Hall clearly made a gift of money after the date of the parties' marriage, the testimony at trial demonstrates that Ms. Hall's gift of $380,000 was not made solely to appellant. See, e.g., Tyulty v. Tyulty, 9th Dist. No. 22022, 2004-Ohio-5198, (holding that the husband's testimony that his father had gifted him $10,000 for a down payment on the marital residence, standing alone, failed to prove, by clear and convincing evidence, such gift was made solely to the husband under R.C. 3105.171(A)(6)(a)(vii)).
 {¶ 37} Appellee testified that Ms. Hall gifted the $380,000 for the express purpose of applying these funds toward his down payment on the CVAC:
 {¶ 38} "Q: When did Mrs. Hall offer funds for the acquisition of CVAC?
 {¶ 39} "A: I don't recall the exact date, but it was somewhere near the end when we were negotiating the terms of the actual way we would finance the buyout of the club."
 {¶ 40} On direct examination, appellant further corroborated appellee's testimony regarding the gift, to wit:
 {¶ 41} "Q: How did it come about that your mother [Ms. Hall] gave you funds that were used to purchase the club?
 {¶ 42} "A: We talked to my mother about the club —
 {¶ 43} "Q: Who's we?
 {¶ 44} "A: I'm sorry. [Appellee] and I talked to my mother about the idea of purchasing the club, and the subject somehow came up that it certainly would be a lot nicer to not have to go to a bank and borrow any money if somebody were kind enough to be gifting it outright to me for a down payment.
 {¶ 45} "* * *
 {¶ 46} "Q: How much did your mother give you?
 {¶ 47} "A: She gave me $10,000 and then another check for $380,000.
 {¶ 48} "Q: Were those funds used to purchase the club?
 {¶ 49} "A: Yes, they were."
 {¶ 50} Although appellant's testimony stated that Ms. Hall had gifted the money to her, appellant's testimony further established that the gift was for appellee to make a down payment on the CVAC. Absent is any evidence that Ms. Hall's gift was intended to be a gift given exclusively to appellant. Appellant has failed to prove, by clear and convincing evidence, that the $380,000 gift was made solely to her. Thus, appellant cannot demonstrate that the gift was her separate property under R.C.3105.171(A)(6)(a)(vii). Appellant's fourth assignment of error is without merit.
 {¶ 51} Under her first assignment of error, appellant argues that the trial court erred in failing to equitably divide the parties' notes. Appellant claims that the trial court's findings of fact demonstrate the court considered the notes as loans to the CVAC, rather than paid-in-capital. Accordingly, appellant concludes that the trial court abused its discretion when it omitted an equitable division of the notes as part of its property division. In addition, appellant contends that the trial court's failure to issue a clear statement in its findings which allocated ownership of the notes results in an abuse of discretion.
 {¶ 52} At the outset, we note that an inconsistency between the court's judgment entry and conclusions of law has created uncertainty as to whether the court considered the notes to be a loan or paid-in-capital. The court's judgment entry stated that the notes were considered paid-in-capital, while the court's conclusions of law stated that the notes were considered loans. More importantly, the court's judgment entry fails to clearly establish whether the court considered the value of the notes as part of the $4,250,000 valuation of the CVAC, or whether the value of the notes were excluded from this valuation.
 {¶ 53} "When allocating property between the parties, a trial court must make written findings of fact that support a property determination with sufficient detail to enable a reviewing court to determine that the decision is fair, equitable and in accordance with the law." Price v.Price, 11th Dist. No. 2000-G-2320, 2002-Ohio-299, 2002 Ohio App. LEXIS 240, at 17. See, also, Debevec v. Debevec, 11th Dist. No. 2002-P-0126, 2004-Ohio-2927, at ¶ 35; R.C. 3105.171(G).
 {¶ 54} Greenwald's report valued the CVAC at $4,250,000. However, this value included a footnote that stated, "[t]he Company owes [appellant] $1,317,540 and [appellee] $187,400 which should be included as personal assets." On direct examination, Greenwald explained the footnote as follows:
 {¶ 55} "Q: Explain to us how the company's notes payable to [appellant and appellee] relate to the value that you arrived at of $4.25 million.
 {¶ 56} "A: They are included in the analysis just like the assets are. I included all assets * * * and all debt.
 {¶ 57} "The Court: Excuse me. That footnote encompasses loans from the [appellant and appellee] to CVAC?
 {¶ 58} "The witness: Yes, your honor.
 {¶ 59} "The Court: And you just treated them as assets?
 {¶ 60} "The witness: I treated them as debts. The company recognized their executed notes. It's listed on the tax returns. The company recognized it as debt and so did I.
 {¶ 61} "The Court: Okay.
 {¶ 62} "Q: So if I understand the footnote properly, we have an asset of Chagrin Valley Athletic Club which has the value of $4.25 million, and there's also a personal asset of the parties which is their note of approximately $1.3 million.
 {¶ 63} "A: Yes. * * *."
 {¶ 64} The foregoing demonstrates that Greenwald's valuation included the parties' notes as a debt of the CVAC and, therefore, considered the value of the notes to be a personal asset of the parties. Apparently, the court accepted Greenwald's valuation of the CVAC, but failed to evaluate the notes as the parties' personal asset and determine whether the value of the notes should be divided as marital property. In any event, the court failed to make sufficient findings as to whether the value of the notes were included in the valuation of the CVAC or whether the value was excluded.
 {¶ 65} Accordingly, the trial court's findings of fact are insufficient to facilitate an adequate appellate review of this issue. Appellant's first assignment of error is with merit to the limited extent indicated. Upon remand, the trial court is instructed to clarify or modify its judgment entry with respect to its treatment of the notes.
 {¶ 66} Under her second assignment of error, appellant maintains that the trial court erred in considering the notes to be paid-in-capital contributions. Instead, appellant argues that the notes should have been considered the marital asset of the parties and divided accordingly. Appellant further argues that the trial court erred by treating the notes as paid-in-capital, while contemporaneously relying on Greenwald's valuation. Moreover, appellant contends that the court failed to set forth a sufficient basis supporting its decision to consider the notes as paid-in-capital.
 {¶ 67} Our analysis of appellant's first assignment of error has determined that the trial court's failure to issue sufficient findings of fact with respect to its treatment of the notes necessitates a remand for further clarification or modification. Thus, appellant's second assignment of error has been rendered moot.
 {¶ 68} Appellant's third assignment of error argues that the trial court abused its discretion when it deducted a speculative capital gains tax from the value of the CVAC. Specifically, appellant claims that the court's findings, and the record, fail to demonstrate that the future sale of the CVAC was a possibility. Therefore, appellant concludes that the court's deduction of a capital gains tax from the value of the CVAC was improper, as this deduction was based upon a speculative future sale.
 {¶ 69} R.C. 3105.171(F) provides a list of factors the trial court must consider when determining the amount of a distributive award. These considerations include "[t]he tax consequences of the property division upon the respective awards to be made to each spouse[.]" R.C.3105.171(F)(6).
 {¶ 70} Nevertheless, this court has repeatedly stated that these tax consequences are not an appropriate consideration when based upon a speculative future sale of property or a speculative future tax rate. See, e.g., Schriefer v. Schriefer, 11th Dist. No. 2003-L-040, 2004-Ohio-2206, at ¶ 27; Frederick v. Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458, at 64-65; Letson v.Letson (Sept. 30, 1997), 11th Dist. No. 95-T-5356, 1997 Ohio App. LEXIS 4445, at 17-18. In doing so, we have relied upon the reasoning of the Tenth Appellate District in Day v. Day (1988), 40 Ohio App.3d 155,159-160, which states:
 {¶ 71} "Tax consequences of property division and sustenance alimony awards are proper considerations for the court, so long as those consequences are not speculative. For example, if the award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered.
 {¶ 72} "* * * While death and taxes are said to be certain, the court had no way of knowing what the pertinent tax rates would be when the amounts are withdrawn five, ten, or fifteen years hence, what the progressive tax rates might be, or into which tax bracket the defendant's taxable income total might fall."
 {¶ 73} Here, the court's findings of fact stated, "[i]f CVAC were to be purchased by a `willing buyer' in an arm's length transaction for $4.25 million, [appellee] would incur a capital gains tax liability of $563,594.50 ($4,250,000 — $1,712,613 [CVAC's purchase price] = $2,537,387 x 27% [tax rate]) * * *." (Emphasis added.) Accordingly, the trial court deducted $563,594.50 from its $4,250,000 valuation of the CVAC.
 {¶ 74} The trial court's consideration of the capital gains tax was inappropriate, as the effect of such tax was based upon pure speculation. Absent is any evidence that appellee had any intention of selling the CVAC. To the contrary, appellee's testimony revealed that owning and operating the CVAC was an endeavor that he enjoyed and wanted to continue indefinitely. Also, appellee testified that he had obtained approval for a loan to pay appellant her marital interest in the CVAC. Therefore, it is evident that appellee was not required to sell his ownership interest in the CVAC to meet the obligations imposed by the trial court.
 {¶ 75} Because there was no evidence of a pending sale of the CVAC, the court had no way of determining the applicable tax rate. Thus, the tax rate applied by the trial court was also speculative.
 {¶ 76} The foregoing demonstrates that the court's consideration of the consequences of a capital gains tax was based solely upon a speculative future sale and speculative tax rate. As a result, the court abused its discretion by determining that the capital gains tax should be deducted from its final valuation of the CVAC. Appellant's third assignment of error is with merit.
 {¶ 77} Appellant's fifth assignment of error asserts that the trial court erred by failing to equitably divide tax refunds received by appellee for the year 2002. The amount of these tax refunds was $59,108.50.
 {¶ 78} As discussed previously, the trial court has broad discretion in fashioning an equitable division of property. Cherry at paragraph two of the syllabus. Absent a showing of an abuse of discretion, this reviewing court cannot modify or reverse a property division. Holcomb at 131.
 {¶ 79} Here, the trial court determined that "[f]or the year 2002, [appellee] is entitled to a tax refund from the Internal Revenue Service of $55,642.50 and from the State of Ohio of $3,466.00." Appellee testified at trial that, following their separation, the parties had agreed to file separate income tax returns for the year 2002. Appellee's individual income tax return was formally admitted as an exhibit to demonstrate that the parties had not filed a joint tax return.
 {¶ 80} Generally, the mere fact that a married party filed a separate tax return does not transform any resulting tax refunds into his or her separate property. Schiesswohl v. Schiesswohl, 9th Dist. No. 21629, 2004-Ohio-1615, at ¶ 38. See, also, Brewer v. Brewer, 5th Dist. No. 2003CA00087, 2004-Ohio-3531, at ¶ 77. However, the court may examine the circumstances surrounding the disputed asset, i.e., a tax refund, and determine that such asset was not available for an equitable division because it was not acquired during the marriage. See, e.g., Hoover v.Hoover (Sept. 8, 1995), 11th Dist. Nos. 93-P-0090 and 93-P-0091, 1995 Ohio App. LEXIS 3912, at 16-17.
 {¶ 81} This court has recognized that "the Supreme Court of Ohio [has] refused to promulgate fixed rules for determining the precise date upon which any marriage irretrievably breaks down." Hoover at 16, citingBerish v. Berish (1982), 69 Ohio St.2d 318, 320. In Berish, the Court stated, "the choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations." Id. at 320. When married parties separate, their contributions and equities do not necessarily end. Hoover at 16, citing Day at 177. "`Rather, * * * the trial court should commence with the date the marriage is judicially terminated and make adjustments therefrom either as to property to be included or as to the value of included property, as equitable considerations may require.'" Hoover at 16-17, quoting Day at 158.
 {¶ 82} In the instant case, the trial court ordered that appellee's income tax refund for 2002 was to remain his separate property. From this, it is apparent the trial court determined that the 2002 tax refund was not acquired during the marriage. Cf. Hoover at 17. Due to this determination, appellee's tax refund remained his separate property and was not subject to an equitable division. Appellant has failed to present any evidence that would contradict the court's finding that the 2002 income tax refund was acquired after the marriage had ended. Given the trial court's broad discretion in making this determination, we cannot say that the court's decision was unreasonable, arbitrary, or unconscionable. Appellant's fifth assignment of error is without merit.
 {¶ 83} Based upon the foregoing analysis, appellant's fourth and fifth assignments of error are without merit, while her second assignment of error is moot. Appellant's first and third assignments of error are with merit. In regards to appellant's first assignment of error, the trial court is required to clarify or modify its judgment entry to properly distribute the notes. Thus, we hereby affirm in part, reverse in part, and remand this matter for further proceedings consistent with our opinion.
Ford, P.J., Rice, J., concur.
[1] Neither party challenges the stipulated terms and principal balances of the notes on appeal.
[2] A written report of Connors' valuation was formally admitted as an exhibit.
[3] A written report of Greenwald's valuation was formally admitted as an exhibit.