OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. This case involves two appeals which have been consolidated. In the first appeal, Defendant-Appellee/Cross-Appellant, Terry Lewis, appeals the decision of the Jefferson County Court of Common Pleas that granted her a divorce from Plaintiff-Appellant/Cross-Appellee, Roger Lewis, divided the couple's marital property, awarded her spousal support, and ordered that Roger pay a portion of her attorney fees. While that case was being appealed, we granted the parties a limited remand so the trial court could address their Civ. R. 60(A) motions to correct certain clerical mistakes. Roger then appealed from the corrected entry.
 {¶ 2} On appeal, Terry challenges the distribution of the marital property and argues she should have been given both more spousal support and more attorney fees. In his appeal, Roger agrees that the trial court erred when distributing the marital property, although for different reasons than those argued by Terry and contends that the spousal support and attorney fees awards were too high.
 {¶ 3} Of all these arguments, only two have any merit. First, the trial court erred by discounting the value of the pharmacy by the tax liability which would be incurred if Roger sold the pharmacy. These tax consequences are purely speculative since there is no evidence that Roger had a present intention to sell the pharmacy at the time of the divorce.
 {¶ 4} Second, the trial court erred when it awarded attorney fees to Terry because it relied on former R.C. 3105.18(H) when making that award, rather than R.C. 3105.73(A). Most importantly, the trial court did not consider whether the award of attorney fees was equitable.
 {¶ 5} For these reasons, the trial court's decision is affirmed in part, reversed in part and this matter remanded for further proceedings.
 Facts {¶ 6} Terry and Roger were married on October 4, 1980. They bore two children, who were emancipated when divorce proceedings began. Roger graduated from *Page 2 
pharmacy school in 1979 and worked as a pharmacist during the marriage. Roger and his father purchased a pharmacy in Toronto, Ohio during the marriage and Roger eventually bought out his father's interest in the pharmacy in 1994. At the end of the marriage, Roger was earning around $321,000.00 per year and the pharmacy was worth $833,800.00.
 {¶ 7} Terry entered the marriage with a high school education. Early in the marriage, she sold cemetery plots. However, she started making and selling crafts. This business began in the basement of the parties' home, but it grew so Terry moved the business into the pharmacy. Her craft business continued to grow and Terry eventually rented out a storefront for her craft business, where Terry employed eight people. Terry earned about $30,000.00 per year at her business, which was worth $97,100.00 at the end of the marriage.
 {¶ 8} In July 2004, after divorce proceedings had begun, Terry liquidated her business over Roger's objections. Terry claimed that she was losing money in the business due to the opening of a new Wal-Mart nearby. Terry also believes she was suffering from a progressive neurological disease. Although Terry's internet research convinced her she had this disease in 2003, she did not obtain a "working diagnosis" of this disease until 2006. A "working diagnosis" means that a doctor states that Terry is reporting the symptoms of the disease, but that the diagnosis has not been physically confirmed.
 {¶ 9} Roger filed a complaint for divorce on August 21, 2003, and Terry counterclaimed for divorce on September 19, 2003. The trial court made certain temporary orders to maintain Terry during the divorce. Terry moved to increase the amount of the temporary support, but the trial court did not rule on that motion until the final decree.
 {¶ 10} The matter did not come to a final hearing until July 2006. At the conclusion of that hearing, the trial court discounted the value of the pharmacy for the tax liability that would be incurred if Roger sold the business. It also found that Terry had committed financial misconduct by closing her business for no good reason while the divorce was *Page 3 
pending. The trial court also found that Terry was healthy and explained why it did not believe she was suffering from a progressive neurological disease. The trial court then retroactively modified the temporary spousal support, made a further spousal support award, and ordered that Roger pay $11,000.00 of Terry's attorney fees.
 {¶ 11} Roger appealed that decision and Terry timely filed a cross-appeal. Meanwhile, each party filed a Civ. R. 60(A) motion to correct certain clerical errors in the judgment entry. This court granted the parties a limited remand so the trial court could consider those motions. The trial court then issued a corrected entry. Roger filed a notice of appeal from this decision and, with our approval, voluntarily dismissed his prior appeal.
 Distribution of Marital Property {¶ 12} Both Terry and Roger assert five assignments of error in these appeals and five of those assignments of error deal with the trial court's valuation and distribution of the parties' marital property. Terry argues:
 {¶ 13} "The trial court erred and abused its discretion by considering the speculative tax consequences of a sale in the valuation of the Toronto Pharmacy."
 {¶ 14} "The trial court erred and abused its discretion in failing to consider the losses, the debt and the tax consequences of a sale related to Terry's Country Treasures in determining the value of the business."
 {¶ 15} "The trial court erred and abused its discretion in failing to divide the bonuses paid during the pendancy of the action."
 {¶ 16} Roger argues:
 {¶ 17} "The court erred in not compensating the Plaintiff/Appellant with a distributive award or with a greater award of marital property."
 {¶ 18} "The court erred in its division of property."
 {¶ 19} Each of the parties' assignments of errors deal with issues within the sound discretion of the trial court. See Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 94. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), *Page 4 5 Ohio St.3d 217, 219. Consequently, this court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131. We cannot independently review the weight of the evidence, rather we must be guided by the presumption that the trial court's findings are correct. Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 20} A domestic relations court is required, when granting a divorce, to equitably divide and distribute the marital property. R.C. 3105.171(B); Wolfe v. Wolfe (1976), 46 Ohio St.2d 399. When dividing marital property, the trial court must divide it equally between the parties unless an equal division would be inequitable. R.C. 3105.171(C)(1); see also Cherry v. Cherry (1981), 66 Ohio St.2d 348 (A potentially equal division of the martial property is the starting point of the trial court's analysis). In determining what is an equitable division of the marital property, the court must consider "all relevant factors," including those found in R.C. 3105.171(F). Id. Pursuant to R.C. 3105.171(F), a trial court which is making a division of marital property must consider the duration of the marriage, the assets and liabilities of the spouses, the desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage, the liquidity of the property to be distributed, the economic desirability of retaining intact an asset or an interest in an asset, the tax consequences of the property division upon the respective awards to be made to each spouse, the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property, any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses, and any other factor the court expressly finds to be relevant and equitable.
 {¶ 21} Pursuant to R.C. 3105.171(G), a trial court must indicate the basis for its division of the marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable and in accordance with the law. Kaechele at 97. As a part of these findings, the trial court must assign a value to all of the marital property. Spychalski v. Spychalski (1992), 80 Ohio App.3d 10,15; Hruby v. Hruby (June 11, 1997), *Page 5 
7th Dist. No. 93-C-9, at 3; R.C. 3105.171(B). The value placed on that asset by the trial court is a factual finding, which will be reversed only if it is found to be against the manifest weight of the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Judgments supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. Id. at 80.
 Value of Businesses {¶ 22} Terry challenges the value the trial court placed on both the pharmacy and the craft store. She contends the trial court improperly took the tax consequences of selling the pharmacy into account when valuing that asset since those consequences are speculative. She argues that the value of her store is not supported by the weight of the evidence since she lost money in the last year it was operating and had a large debt load after the business was closed.
 Pharmacy {¶ 23} In this case, Roger testified that he was thinking about retiring after the divorce. He stated that his personal preference would be to sell the pharmacy, but that he may semi-retire instead, if the finances of the sale did not work out to his satisfaction. However, he confirmed that the store was not for sale as of the trial date. The trial court found that it was "highly likely that the pharmacy will be sold in the reasonably near future and will generate a taxable event." Accordingly, it deducted what the current capital gains tax would be from the value of the property.
 {¶ 24} When challenging the valuation of the pharmacy, Terry is not taking issue with the initial value the trial court placed on the property. Instead, her complaint is with the discounted value the trial court assigned to the property after it considered the tax consequences of a sale of that business. Accordingly, we will only address the reasonableness of that discount, not the reasonableness of the initial valuation of the asset.
 {¶ 25} Almost a decade ago, we confirmed that courts can consider the capital gains tax consequences of the sale of marital property when making a division of marital property at divorce as long as those consequences are not speculative. See Olenik v. *Page 6 Olenik (Sept. 18, 1998), 7th Dist. No. 94 CA 139. In Olenik, the parties owned some stock in a family-owned corporation at the time of the divorce. The trial court valued that stock at the time of the divorce without regard to the capital gains tax which would be incurred if the stock were sold. This court affirmed that decision, saying that the tax consequences of the sale of that stock were too speculative.
 {¶ 26} "In light of the circumstances surrounding the stock at issue, it cannot be determined that the trial court acted unreasonably, arbitrarily or unconscionably in deciding the tax consequences were too speculative to consider. It could not be determined with certainty when, if ever, appellant would sell the stock thereby incurring capital gains tax consequences. Additionally, no tax rate was provided nor could one be fathomed since no inclination was given as to when the stock would be sold. As a result, the trial court was well within its discretion in refusing to levy tax consequences against appellee when appellant may never experience these consequences himself." Id. at 8.
 {¶ 27} Other courts have held that the tax consequences of a sale of property are speculative absent any evidence of any intention of selling the property. Rosenberger v. Rosenberger, 11th Dist. No. 2004-G-2555,2005-Ohio-1790, at ¶ 74; see also Thomas v. Thomas, 171 Ohio App.3d 272,2007-Ohio-2016, at ¶ 9 (Tax consequences are speculative if the trial court does not order a sale and the evidence shows an intent to maintain the asset); Waller v. Waller, 163 Ohio App.3d 303, 2005-Ohio-4891, at ¶ 30 (There are no tax consequences if the parties are not liquidating an asset).
 {¶ 28} The Second District affirmed a trial court's conclusion that the tax consequences of the sale of an asset were too speculative even though a possible buyer had contracted for an option to buy the asset.James v. James (1995), 101 Ohio App.3d 668, 688.
 {¶ 29} "Although Mr. James asserted that the Saffron property was the subject of an option contract, he failed to establish the likelihood that the option would be exercised. He asserted that he was likely to incur $12,000 in capital gains taxes, but he failed to present any evidence of the basis for determining the amount of capital gain that he would realize as a result of a sale. Based on the evidence presented at the hearing *Page 7 
before the referee, the alleged prospective tax consequences of the distribution of the Saffron property were speculative. Accordingly, we cannot say that the referee acted unreasonably, arbitrarily, or unconscionably by declining to reduce the value of the Saffron property by the estimated amount of capital gains tax that Mr. James alleged he would incur." Id.
 {¶ 30} Since the case was being remanded, the court acknowledged that such evidence could be introduced, which could change the analysis. Id.
 {¶ 31} Other courts have found that the tax consequences of a sale are not speculative. This typically happens when a sale of the asset is made necessary by the trial court's distribution of the marital property. SeeDay v. Day (1988), 40 Ohio App.3d 155, 159; Kelley v. Kelley, 12th Dist. No. CA2001-04-087, 2002-Ohio-2317, at ¶ 14.
 {¶ 32} Thus, a trial court has to exercise some discretion when determining whether the tax consequences of the sale of a particular asset are too speculative to be included in the division of the marital property. Since the test is whether the tax consequences are "too speculative," the trial court should be the first one to make that decision and its decision will be given some deference. However, the tax consequences in this case are too speculative to support the trial court's decision to try to take them into account in this case.
 {¶ 33} Roger presented the testimony of an expert witness who calculated the tax consequences of a sale if the sale was accomplished under the current tax structure. However, Roger, a 51 year-old man, has only indicated a general desire to start thinking about selling the pharmacy at some time in the future, not a strong intent to sell the pharmacy within a specific period of time in the near future.
 {¶ 34} The trial court found that the tax consequences of the sale in this case were not speculative because the asset in question was a business, Roger would surely retire someday in the "reasonably near future," and "virtually no one keeps a business" until they die. Essentially, the trial court concludes that a sale is bound to happen at some time and that Roger will incur some kind of tax penalty at that future sale. Therefore, the trial concluded that it was reasonable to take those future tax consequences into account *Page 8 
when valuing the business.
 {¶ 35} The problem with this analysis is that the trial court was forced to engage in speculation in order to reach the result. First, it speculated that Roger would sell the business sometime "relatively soon." This speculation was surely built upon some evidence, i.e. Roger's testimony that he was thinking about looking into retiring after the divorce. Nevertheless, the trial court had to speculate that Roger would make the decision to sell. Second, the trial court speculated that the tax consequences when Roger eventually sold the business would be similar to the consequences of selling the business now. There is simply no way to know what the tax consequences of a sale in the non-immediate future will be.
 {¶ 36} Finally, a sale of the pharmacy is not made necessary by the trial court's division of the marital assets. In its judgment entry, the trial court ordered Roger to pay Terry $396,485.25 in cash to equalize the distribution of property. It also ordered that he pay her a lump sum of $47,375.00 in retroactive spousal support. Thus, the trial court ordered Roger to pay a total of $443,860.25 in cash to Terry. The total value of the assets the trial court was leaving in Roger's possession, other than the pharmacy, is $346,524.57. Clearly, this is not enough to satisfy his obligation to Terry. However, the record shows that Roger has good credit and a very profitable business. There is no apparent reason why he could not obtain a loan, as opposed to selling his business, in order to satisfy that obligation.
 {¶ 37} Given these facts, it is simply too speculative to calculate the tax consequences of the eventual sale of the pharmacy at this time. Thus, the trial court abused its discretion when it discounted the value of the pharmacy for the tax consequences of a possible sale sometime in the "reasonably near future." Terry's first assignment of error is meritorious.
 Terry's Country Treasures {¶ 38} Terry also complains about the valuation of her business. She does not understand how the trial court could conclude that her business was worth $97,100.00 when the undisputed evidence shows that her net income for the last year the business *Page 9 
operated was a loss of $5,159.00. She also makes reference to a large debt associated with that business after it was closed. Finally, she argues the trial court should have reduced the value of her business because of tax consequences like it did with the pharmacy.
 {¶ 39} In this case, only one witness, Roger's expert, testified about the value of Terry's business and he gave it the value adopted by the trial court. Terry's argument that this was plainly a wrong value demonstrates a misunderstanding about how businesses are valued.
 {¶ 40} The expert looked at a variety of facts, including cash flow, inventory, past profits, and debts, when valuing Terry's business. Terry focuses on a single fact, that the business lost about $5,000.00 in its last year of operation, to counter the expert's valuation. However, the fact that Terry lost money that year was factored into the valuation. Furthermore, the fact that a business loses a small amount of money one year after turning a nice profit for years before that does not show that the business is now worth nothing. It may be worth a little less than it would if Terry had made a profit that last year, but a deficit does not automatically wipe out any value the business had accumulated.
 {¶ 41} Terry's second argument, that the total debt of the business at closing was over $100,000.00 is not supported by the record. Terry's brief does not cite to the place in the record containing this fact, which is notable since her other factual claims are supported by citations to the specific place in the record demonstrating that fact. It does not appear that any of the testimony referred to this fact and it is not established by any of the exhibits. Since this argument is not supported by the record, it does not form a basis for reversing the trial court's decision.
 {¶ 42} Terry's final argument is also meritless. The trial court explained that it did not deduct the taxes that a sale of Terry's business would generate because Terry had already closed down the business, leaving nothing to sell. Since there was nothing to sell, it would be impossible to incur a tax liability on that sale.
 {¶ 43} In conclusion, Terry's challenge to the valuation of her own business in her *Page 10 
second assignment of error is meritless. The record fully supports both the value the trial court assigned to that business and its decision not to reduce that value based on possible tax consequences of a sale of that business.
 Financial Misconduct {¶ 44} In his third assignment of error, Roger contends that the trial court should have given him a greater share of the marital property because Terry committed financial misconduct by closing her business, liquidating other assets, and living beyond her means while the divorce was pending. It is difficult to understand the basis for many of these arguments. In its judgment entry, the trial court found as follows:
 {¶ 45} "Wife has been guilty of Financial Misconduct in several respects. The first is the neglect and closing of Terry's Country Treasures, another is in the dissipation of an IRA valued at $4,574.07. Both of these items will appear in Wife's column. A third area of Financial Misconduct occurred when Wife liquidated all of the Terry's Country Treasures hard assets which were valued at least $60,000.00. Only she knows what happened to that money. The value of that misconduct however is included in the value of Terry's Country Treasures and to include it again would cause duplication."
 {¶ 46} The trial court then assigned the value of Terry's business and the IRA to Terry when dividing the marital assets. Since these assets did not actually exist at the time of the divorce, the trial court was, therefore, awarding Roger a greater share of the martial property due to Terry's financial misconduct. Thus, the trial court did exactly what Roger is now claiming it should have done. Accordingly it could not have committed the error which he is claiming.
 {¶ 47} This being said, there is one instance where Roger believes the trial court should have found financial misconduct but did not. In July 2003, Terry purchased $11,933.14 worth of supplies for her business using Roger's credit card. Roger testified that he did not authorize those purchases. He contends these purchases amount to financial misconduct.
 {¶ 48} The trial court did not find that these purchases, in and of themselves, amounted to financial misconduct. This conclusion is reasonable. For example, if Terry *Page 11 
had continued operating her business, she could have paid those debts and not committed any form of misconduct. Accordingly, any misconduct related to these purchases is subsumed in the misconduct already mentioned, the voluntary closing of Terry's business. Accordingly, the trial court did not abuse its discretion when it refused to find that these purchases were examples of financial misconduct. For these reasons, Roger's third assignment of error is meritless.
 Bonuses {¶ 49} In her fourth assignment of error, Terry argues that the trial court erred when it failed to divide the bonuses that Roger earned in 2004, 2005, and 2006, while the divorce was pending, equally between the parties. She claims two sources of authority for this argument: Ohio Supreme Court precedent showing that bonuses are marital assets which should be divided upon divorce and 2) an October 2003 hearing in which the trial court indicated that it intended for the parties to split any bonus earned while the divorce was pending.
 {¶ 50} Terry is correct that bonuses paid or earned during the course of a marriage are martial assets. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 96-97. However, the parties stipulated that the de facto date of the end of the marriage was on December 31, 2003. Since bonuses paid in 2004, 2005, and 2006 were earned in 2004, 2005, and 2006, respectively, they were not earned during the marriage. Accordingly, these bonuses earned were not marital assets which had to be divided between the parties according to law.
 {¶ 51} Furthermore, Terry cannot rely on the statement by the trial court in the October 2003 hearing. First, Terry has failed to provide this court with a transcript of that hearing, so this court cannot confirm that the trial court actually said what she claims it said. More importantly, the trial court never said anything about splitting the bonuses earned while the divorce was pending in any of its judgment entries. It is axiomatic in Ohio that a court speaks through its journal. State v. King, 70 Ohio St.3d 158, 162, 1994-Ohio-0412. Since the trial court never ordered that these bonuses be split in a journal entry, there is no order that this be done. Terry's fourth assignment of error is meritless. *Page 12 
 Division of Property {¶ 52} In his fifth assignment of error, Roger addresses seven other errors he believes the trial court made when dividing the parties' property.
 {¶ 53} First, Roger contends that the trial court erred in finding that a particular investment account is an asset separate from his pharmacy because it is funded with cash generated by that business. This argument is meritless. The fact that a party funds an account with earnings from a business does not mean that the account is part of the business which is included in the value of the business. Similarly, the parties' marital residence is not valued as part of the business, even though cash from the business funded the purchase of the home.
 {¶ 54} Roger next argues that the pharmacy loaned money to he and Terry during the marriage and that the loan had not been fully repaid. He argued that the amount left outstanding on this loan should have been divided between the parties. Again, he is incorrect.
 {¶ 55} In this case, the value of the pharmacy is a martial asset. If the outstanding loan were included in the value of the pharmacy, then the value of the pharmacy would be increased by that amount. However, Roger's expert testified that he excluded the value of that loan from his valuation of the pharmacy because Roger is the sole owner of that business and it was this value that the trial court adopted. Since the amount of the loan was not included as a marital asset, then it cannot be included as a marital debt. The trial court did not abuse its discretion in this regard.
 {¶ 56} Roger's third argument is that the trial court should have made Terry responsible for the $11,933.14 worth of purchases she made for her business on Roger's credit card. However, the trial court did not find that Terry committed financial misconduct when making those purchases and Roger has already paid the debt. Since there is no financial misconduct, Roger's argument that he should be credited for paying that debt is meritless.
 {¶ 57} Roger argues that Terry's business owned a delivery truck which was not included in the valuation of her business and that it was sold. He believes that the *Page 13 
amount of this truck should also be counted against Terry, as part of the financial misconduct she committed when closing her business.
 {¶ 58} Roger's claim that this vehicle was not included in the value of the business has no factual basis in the record. Roger's expert never testified to this. Furthermore, his expert's report shows that "vehicles" were counted as an asset of the business. Thus, the value of this delivery truck would be included in the value of the business already assigned to Terry. The trial court did not err by not listing this as a separate asset for Terry.
 {¶ 59} Fifth, Roger claims that the evidence shows that a particular bank account is his separate property. On December 31, 2003, that account contained $23,183.00. At trial he testified he opened up that account in 2003 after he and Terry closed their joint accounts. Since all of the money in the account was earned after the couple separated, he believes that it is his separate property. The problem with this argument is that the parties stipulated that the marriage ended on December 31, 2003. Therefore, any money Roger deposited in that account which came from his business prior to that date is still marital property. Thus, the trial court did not err by including this account in its division of the marital property.
 {¶ 60} Roger next argues that Terry dissipated a security deposit which was worth $8,000.00 as of December 31, 2003. There was no testimony on this issue, but counsel stated that it was a security deposit the bank had on a loan to Terry's business. That deposit was used when Terry closed her business.
 {¶ 61} Since this money was a security deposit for Terry's business then it should have been included in the valuation of her business. Since there is no evidence that it was not, then the trial court did not abuse its discretion by not explicitly adding this asset to the division of the marital property.
 {¶ 62} Finally, Roger claims that the trial court erred by counting the loan left on Terry's vehicle against her since her doctor signs a statement which permits Terry to avoid making automobile payments. This argument is meritless since there is no assurance that Terry's doctor will continue to fill out that paperwork in the future. *Page 14 
 Conclusion on the Division of Property {¶ 63} Although the parties make many arguments with respect to the trial court's division of the marital property, only one of those arguments, the valuation of the pharmacy, has merit. Nevertheless, since it appears there is an error, we must remand this matter back to the trial court so it can re-divide the parties' marital property.
 Spousal Support {¶ 64} Three of the parties' assignments of error address the trial court's decision to award spousal support to Terry.
 {¶ 65} Terry argues:
 {¶ 66} "The trial court erred and abused its discretion in its award of spousal support to the Appellee in both amount and duration."
 {¶ 67} Roger argues:
 {¶ 68} "The trial court erred in awarding Defendant/Appellee make up spousal support in the amount of $47,375.00."
 {¶ 69} "The trial court erred and abused its discretion in the spousal support and health insurance award, both as to the amount and duration thereof."
 {¶ 70} These arguments will also be reviewed for an abuse of discretion. Blakemore at 218-219.
 Retroactive Spousal Support {¶ 71} In his first assignment of error, Roger claims the trial court erred by retroactively increasing the temporary spousal support award in effect while the divorce was pending. According to Roger, he was not put on notice that this was a possibility, so retroactively modifying that award violates his due process rights.
 {¶ 72} Roger is correct that the trial court cannot retroactively modify a temporary spousal support award in a final divorce decree in the absence of a motion to modify the temporary spousal support award.Ostmann v. Ostmann, 168 Ohio App.3d 59, 2006-Ohio-3617, at ¶ 41-45. However, if a motion to modify is filed, then a trial court can
retroactively modify a temporary spousal support award in a final divorce decree to the date the motion was filed. Id. at ¶ 45, footnote 11; see also Didisse v. Didisse, 7th Dist. *Page 15 
No. 04 BE 4, 2004-Ohio-6811, at ¶ 36. In this case, Terry moved to modify the temporary spousal support award on December 8, 2003, about a month after it was first put into effect. Thus, the trial court had the authority to retroactively modify the spousal support award to this date.
 {¶ 73} In this case, the trial court ordered that Roger's temporary spousal support obligation begin on November 1, 2003, and be paid on the 1st and 15th of each month. Terry moved to modify that order on December 8, 2003. In its final divorce decree, issued on November 9, 2006, the trial court modified thirty-five months of payments. Since the award had been in effect for thirty-six months and it had been thirty-five months since Terry filed her motion to modify, the trial court properly modified the temporary spousal support retroactively to the date the motion to modify was filed. Accordingly, the arguments in Roger's first assignment of error are meritless.
 Prospective Spousal Support {¶ 74} Both Terry and Roger find fault with the trial court's spousal support award. In her third assignment of error, Terry argues that the trial court awarded her too little for not long enough. In his fourth assignment of error, Roger argues the trial court awarded too much for too long a period of time.
 {¶ 75} In determining whether to award spousal support, the trial court's discretion is subject to the factors set out in R.C. 3105.18(C)(1). Koegel v. Koegel (1982), 69 Ohio St.2d 355, 357. That statute provides:
 {¶ 76} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 77} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 78} "(b) The relative earning abilities of the parties;
 {¶ 79} "(c) The ages and the physical, mental, and emotional conditions of the *Page 16 
parties;
 {¶ 80} "(d) The retirement benefits of the parties;
 {¶ 81} "(e) The duration of the marriage;
 {¶ 82} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 83} "(g) The standard of living of the parties established during the marriage;
 {¶ 84} "(h) The relative extent of education of the parties;
 {¶ 85} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 86} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 87} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 88} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 89} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 90} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 91} A trial court must indicate the basis for its award of spousal support in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable and in accordance with the law.Kaechele v. Kaechele (1988), 35 Ohio St .3d 93, 97; Heslep v.Heslep (June 14, 2000), 7th Dist. No. 825. In order to accomplish this result, the entry must provide some illumination of the facts and reasoning underlying the judgment. Lepowsky v. Lepowsky, 7th Dist. No. 04 CO 42, 2006-Ohio-0667, at ¶ 51.
 {¶ 92} In this case, the trial court analyzed each of the statutory factors. It *Page 17 
concluded that Roger would have an income of $321,000.00 per year, imputed income of $30,000.00 to Terry, and noted that she would receive "considerable passive income" from her property settlement. It found that these incomes reflected the parties' earning abilities. The trial court next noted that both parties were in their early 50's and found that each of them were healthy, "despite [Terry's] considerable efforts to appear disabled." It concluded that they each had "ample funds available" for retirement. The trial court next recognized that the parties had been married for over twenty-three years and had no minor children. The parties established an upper-middle class lifestyle during the marriage. All of the parties' education was completed before the marriage. Roger has a pharmacy degree and Terry has a high school diploma. The parties each had over $700,000.00 in assets after the division of property and neither party has a court ordered payment other than spousal support. Terry will bear the burden of the tax liability of any spousal support awarded to her. Neither party lost income production capacity due to marital responsibilities. Finally, the court noted that Roger had already been paying spousal support for three years by the time of the divorce decree.
 {¶ 93} After analyzing all of these factors, the trial court rejected Terry's argument that she was entitled to spousal support for an indeterminate time because she had demonstrated considerable business ability in the past. It then awarded her spousal support of $5,000.00 per month for the first three years following the divorce and $3,000.00 per month for the next three years following the divorce.
 {¶ 94} Roger claims this award is too high for two reasons: 1) the trial court incorrectly included the bonuses from the pharmacy in Roger's income and 2) Terry is a healthy woman in her early fifties who has shown that she can successfully run a business. Each of these arguments is meritless.
 {¶ 95} First, the income which the trial court relied upon when making its spousal support award is an average of the income which Roger actually made over the past few years, his salary plus his bonus. Roger apparently believes that the amount of the bonus is a part of the value of the business, which has already been divided between the parties, but this is not the case. Roger testified that the bonus is based on the *Page 18 
pharmacy's income at the end of the year and is calculated when the yearly taxes are prepared. Therefore, the bonuses are not a part of the value of the business. They are income produced in the business. Accordingly, the trial court properly considered these bonuses when awarding spousal support.
 {¶ 96} Second, Terry has successfully operated a business, but her average income from that business was only $30,000.00. This is clearly an insufficient amount of income to maintain anything close to an upper-middle class lifestyle. Furthermore, the trial court specifically took Terry's business experience into account when awarding spousal support. Thus, Roger's argument that the trial court awarded too much spousal support is meritless.
 {¶ 97} Terry argues that the trial court's award is inadequate because it was not large enough to meet her expected monthly expenses. At trial, Terry estimated that her monthly expenses were approximately $6,356.96. The trial court imputed $30,000.00 of income per year to Terry, which means that she has imputed income of $2,500.00 per month. When this imputed income is added to the trial court's spousal support award, she is receiving $7,500.00 per months for the first three years and $5,500.00 per month for the next three years. This means that Terry has more than enough income to meet her months expenses for the first three years and may have enough for the three years after that, depending on whether Terry can live within her budget. Thus, the trial court did not award too little as a monthly spousal support award.
 {¶ 98} Finally, Terry argues that the trial court should have awarded spousal support for an indefinite period, since this was a marriage of long duration and she was primarily a homemaker during the marriage. "In cases involving a marriage of long duration, parties of advanced age, or a homemaker spouse with little opportunity to develop meaningful employment outside the home, a trial court may, in the proper exercise of its discretion, award spousal support for an indefinite period."Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 69.
 {¶ 99} Although Terry argues that she was primarily a homemaker during the marriage, the evidence shows otherwise. Terry was employed at many points in the *Page 19 
marriage and started a successful business during the marriage. It does not appear that her duties as a homemaker deprived Terry of an "opportunity to develop meaningful employment outside the home." Thus, the fact that Terry may have been a homemaker at some time during the marriage would not support an award of spousal support for an indefinite period.
 {¶ 100} Of course, the parties' marriage was twenty-three years long, long enough to qualify as a marriage of long duration. See Lewis v.Lewis, 7th Dist. No. 04 JE 8, 2005-Ohio-1444 (Marriage of twenty-two years is a marriage of long duration). However, the length of the marriage does not, in and of itself, mean that an indefinite award of spousal support is appropriate. After all, Kunkle states that a trial court may make an indefinite award of spousal support when there is a marriage of long duration, not that it must do so.
 {¶ 101} In Thomas v. Thomas, 12th Dist. Nos. CA2002-05-130 
CA2002-06-140, 2003-Ohio-5982, the Twelfth District was faced with a similar situation. In that case, the parties had been married for twenty-four years at the time of the divorce. The husband had been self-employed as a real estate appraiser and the wife had a degree in elementary education. She stopped working for ten years when the parties had children, but started working part-time performing secretarial tasks for her husband's business a few years before the marriage ended. At the time of the divorce, the wife asked for spousal support for an indefinite period of time, but the trial court only awarded her spousal support for ten years. The wife appealed and the Twelfth District affirmed the trial court's decision.
 {¶ 102} "While the parties' marriage qualifies as a marriage of long duration, see id., we nevertheless find that the trial court did not abuse its discretion by awarding spousal support for a period not to exceed ten years. Considering the facts of this case, including the fact that Debbie is in good health, has several years of employment ahead of her, has a college education, could get re-certified as a teacher if she wanted to and start earning $26,000 a year with benefits, and has a good potential for self-support once she updates her computer skills or gets re-certified as a teacher, the fact that Melissa is *Page 20 
emancipated, and the fact that the trial court reserved jurisdiction over the issue of spousal support, we cannot say that the trial court's decision to award spousal support to Debbie for a period not to exceed ten years is so unreasonable, arbitrary, or unconscionable as to amount to an abuse of discretion." Id. at ¶ 60.
 {¶ 103} In this case, Terry has had the opportunity to learn valuable business skills during the marriage, has received a substantial amount of money in the property distribution, and has the ability to become self-sufficient after the marriage. Thus, the trial court did not abuse its discretion when it only awarded spousal support for a definite period of time.
 {¶ 104} In conclusion, the trial court did not abuse its discretion when it awarded spousal support to Terry. Both Terry's third assignment of error and Roger's fourth assignment of error are meritless.
 Attorney fees {¶ 105} The parties' last two assignments of error address the trial court's decision to award attorney fees to Terry. Terry argues:
 {¶ 106} "The trial court erred and abused its discretion in not awarding Appellee sufficient fees and expenses, including attorney's fees."
 {¶ 107} Roger argues:
 {¶ 108} "It was an abuse of discretion for the court to award attorney's fees to the Defendant/Appellee."
 {¶ 109} We also review these assignments of error for an abuse of discretion. Rand v. Rand (1985), 18 Ohio St.3d 356, 359.
 {¶ 110} In this case, the trial court ordered that Roger pay $11,000.00 of Terry's attorney fees. In her final assignment of error, Terry argues that the trial court should have ordered Roger to pay a larger portion of those fees. In his second assignment of error, Roger claims that the trial court erred by ordering that he pay any portion of Terry's attorney fees.
 {¶ 111} When it awarded attorney fees in this case, the trial court explicitly relied on R.C. 3105.18(H). That statutory subsection provided as follows: *Page 21 
 {¶ 112} "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 113} However, this statutory subsection was deleted in April 2005 by 2004 H 36 and replaced by R.C. 3105.73(A), which provides:
 {¶ 114} "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 115} R.C. 3105.73(A) applies retroactively and governs the award of attorney fees in this case. Carter v. Carter, 10th Dist. No. 05AP-745,2006-Ohio-1206, at ¶ 13.
 {¶ 116} R.C. 3105.73(A) differs from former R.C. 3105.18(H) in an important respect, it does not specifically state that a court consider the ability to pay when deciding whether to award attorney fees. Instead, a court must determine whether it is "equitable" to have one party pay the other's attorney fees. A trial court still can consider the parties' relative ability to pay attorney fees when deciding what is equitable in a particular case. Heyman v. Heyman, 10th Dist. No. 06AP-1070, 2007-Ohio-2241, at ¶ 14-16. However, it is no longer required to consider that ability in determining who should pay the fees.Sweeney v. Sweeney, 10th Dist. No. 06AP-251, 2006-Ohio-6988, at ¶ 32.
 {¶ 117} There have been other cases in which a trial court improperly relied on former R.C. 3105.18(H) after the effective date of R.C. 3105.73 and those appellate *Page 22 
courts have found that they must reverse the trial court's decision so it can apply the proper law when considering the issue. See Heyman v.Heyman, 10th Dist. No. 05AP-475, 2006-Ohio-1345, at ¶ 13; Berthelot v.Berthelot, 9th Dist. No. 22819, 2006-Ohio-1317, at ¶ 72; Carter
at ¶ 14-15.
 {¶ 118} We agree. The trial court never found that the award of attorney fees would be equitable and there is no indication that it ever considered this issue. Thus, each of the parties' assignments of error addressing this issue is meritorious.
 Conclusion {¶ 119} The parties have raised many issues in these appeals, but only two have any merit. First, the trial court erred by discounting the value of the pharmacy by the tax liability which would be incurred if Roger sold the pharmacy. These tax consequences are purely speculative since there is no evidence that Roger had a present intention to sell the pharmacy at the time of the divorce.
 {¶ 120} Second, the trial court erred when it awarded attorney fees to Terry because it relied on former R.C. 3105.18(H) when making that award, rather than R.C. 3105.73(A). Most importantly the trial court did not consider whether the award of attorney fees was equitable.
 {¶ 121} For these reasons, the judgment of the trial court is affirmed in part, reversed in part and this case is remanded to the trial court for further proceedings.
Vukovich, J., concurs.
 Donofrio, J., concurs. *Page 1