[Cite as *Nieman v. Nieman*, 2015-Ohio-5186.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

JAMES NIEMAN,

    PLAINTIFF-APPELLEE,              CASE NO. 1-15-30

    v.

LISA NIEMAN,                        O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. CR 2013 0480

Judgment Reversed and Cause Remanded

Date of Decision: December 14, 2015


APPEARANCES:

    *Andrew S. Grossman* for Appellant

    *Aimee L. Keller* for Appellee

Case No. 1-15-30

**SHAW, J.**

{¶1} Defendant-appellant Lisa Nieman ("Lisa") brings this appeal from the November 30, 2015 "Decree of Divorce and Shared Parenting Decree" entered by the Allen County Common Pleas Court which distributed marital assets, awarded spousal support to Lisa, and determined child support upon Lisa's divorce from plaintiff-appellee James Nieman ("James").[1]

*Relevant Facts and Procedural History*

{¶2} Lisa and James were married December 10, 1994, and had four children together. The children were born in 1995, 1999, 2005, and 2008. The oldest child was emancipated at the time the divorce was filed.

{¶3} James is an orthopedic surgeon employed by the Orthopedic Institute of Ohio ("OIO"). James holds an ownership interest in four businesses related to his practice: OIO itself, Northwest Oil, West Central Land Development ("WC Land Development"), and West Central Ohio Physician's Group ("Phy. Org.").

{¶4} Lisa is a registered nurse and worked for over four years in that position. She has kept current with her certification; however, she has not worked since the children were young.

---

[1] We note that Lisa actually originally appealed from an April 29, 2015 judgment entry which divided the parties' assets but did not properly incorporate a subsequently filed shared parenting decree. On November 10, 2015, this Court issued a stay of the proceedings and the case was remanded to the trial court to issue a proper final appealable order. The trial court issued a final order on November 30, 2015. *See* App.R. 4(C).

-2-

{¶5} On October 13, 2013, James filed a complaint for divorce alleging that the parties were incompatible and that they had been living separate and apart for over a year. (Doc. No. 1). On October 31, 2013, Lisa filed her answer and a counterclaim for divorce seeking spousal support and child support. (Doc. No. 11).

{¶6} The matter proceeded to a final hearing on October 20-21, 2014. Both James and Lisa testified at the final hearing. In addition, both parties called financial experts who valued the parties' substantial assets and testified as to James's income. The parties owned a number of assets that needed to be divided by the trial court in its final decree including, *inter alia*, James's interest in his businesses, the marital residence in Lima, Ohio, a vacation home in Indiana, multiple life insurance policies, multiple bank accounts, various farms containing in excess of 600 acres of farmland, multiple boats, and high-end SUVs. At the conclusion of the hearing the parties elected to submit written closing arguments.

{¶7} On April 2, 2015, the trial court issued a 22-page decision on the matter. In the decision the trial court valued and distributed the parties' assets and debt. The trial court elected to give a precise 50-50 split to Lisa and James, giving each in excess of $4 million in marital equity.

{¶8} The trial court also ordered James to pay spousal support in the amount of $24,000 per month to Lisa for 57 months. In addition, the court

determined that shared parenting was in the best interests of the parties' children and adopted James's shared parenting plan. The trial court then determined child support for the three non-emancipated children, ultimately finding that James should pay $3,814.58 per month total in child support, plus a 2% administrative fee.

{¶9} On November 30, 2015, the trial court's decision was reduced to a final judgment. It is from this judgment that Lisa appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DEDUCTED SPECULATIVE TAXES FROM THE VALUE OF JIM'S BUSINESSES.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF CHILD SUPPORT.**

*First Assignment of Error*

{¶10} In her first assignment of error, Lisa argues that the trial court erred in valuing the parties' assets by deducting "speculative" taxes from the value of James's businesses when determining their value. Specifically, Lisa contends that pursuant to *Lewis v. Lewis*, 7th Dist. Jefferson Nos. 06JE49, 07JE27, 2008-Ohio-

3342, *Rosenberger v. Rosenberger*, 11th Dist. Geauga No. 2004-G-2555, 2005-Ohio-1790, and *Thomas v. Thomas*, 171 Ohio App.3d 272, 274-275, 2007-Ohio-2016 (1st Dist.), when a business is not being sold, or is not required to be sold due to the distribution of assets in a divorce, the *potential* tax consequences that *may* result from a future sale are too speculative and it is improper for a trial court to deduct those speculative taxes from the value of a business.

{¶11} Revised Code 3105.171 contains a list of factors a trial court must consider when determining the amount of a distributive award. Revised Code 3105.171(F)(6) specifically states that the trial court shall consider "[t]he tax consequences of the property division upon the respective awards to be made to each spouse."

{¶12} Nevertheless, in *Day v. Day*, 10th Dist. Franklin No. 87AP768, 40 Ohio App.3d 155, 159 (1988), the Tenth District Court of Appeals held that, "Tax consequences of property division * * * awards are proper considerations * * * *so long as those consequences are not speculative*. For example, if the award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered." (Emphasis added.) Similar to *Day*, this Court has explicitly stated that "[t]ax consequences of property division may be proper considerations for the court, so long as those consequences are not speculative." *Huelskamp v. Huelskamp*, 3d

Dist. Auglaize No. 02-09-21, 2009-Ohio-6864, ¶ 37. Other Ohio Appellate Courts have regularly repeated the language that tax consequences are proper considerations for the trial court so long as they are not speculative. *See Schriefer v. Schriefer*, 11th Dist. Lake No. 2003-L-040, 2004-Ohio-2206, ¶¶ 28-29; *Kelley v. Kelley*, 12th Dist. Butler No. CA2001–04–087 2002-Ohio-2317, ¶ 12; *Thomas v. Thomas*, 1st Dist. Hamilton No. C-060430, 2007-Ohio-2016, ¶ 6; *Gest v. Gest*, 9th Dist. Lorain No. 96CA0006580, 1998 WL 208872, * 8; *Lewis v. Lewis*, 7th Dist. Jefferson Nos. 06JE49, 07JE27, 2008-Ohio-3342, ¶ 25.

{¶13} There is no dispute in this case that if an asset, such as a business, is being sold at the time of a divorce, the tax consequences are not too speculative for a trial court to consider. Similarly, there does not seem to be a dispute that if a property distribution in a divorce *requires* a business to be sold to equitably distribute the assets, tax consequences are also properly considered. *See Day*, *supra*, at 159. However, the dispute between the parties arises from a situation where [1] the businesses are not being sold and [2] are not required to be sold by the trial court's distribution of assets. We are thus asked to specifically determine whether the taxes in this particular instance, which falls outside of those two categories, were "too speculative" for the trial court to have considered in valuing the businesses.

{¶14} In this case James testified that he held an ownership stake in four businesses: Phy. Org. (7.1429%), OIO (7.1429%), WC Land Development (6.6666%), and Northwest Oil (7.1429%). Both James's expert and Lisa's expert valued James's ownership stake in the four businesses and testified to those valuations at trial. The pre-tax valuations between the two experts were similar but the trial court ultimately used James's expert's pre-tax valuations and Lisa does not contest this aspect of the property distribution on appeal.

{¶15} James's expert valued James's pre-tax interest in his businesses as follows: Phy. Org. - $4,477,990, OIO - $131,523, WC Land Development - $78,446, and Northwest Oil - $52,758. The total value of the four businesses, before factoring in taxes, according to James's expert was thus approximately $4,740,717.[2]

{¶16} James's expert then testified to the values of the businesses when factoring in the tax consequences of a possible sale, which resulted in a value decrease of over $1 million. James's expert testified that he used the current tax rates when determining the value of James's businesses as the current tax rates and James's current income were both known, and thus they were not speculative

---

[2] Illustrating that the parties' pre-tax valuations of the businesses were not far apart, Lisa's expert valued them, in total, at approximately $5,019,870. The bulk of the difference was the valuation of Phy. Org., which James's expert valued at $4,477,990, and Lisa's expert valued at $4,716,615, creating a difference of approximately $238,625.

figures. Further, he also testified he did not expect the tax rates to change much at any time in the near future.

{¶17} In addition, the record indicates that James would have to sell his interest in at least one of the businesses, Phy. Org., the most valuable business, when he retired. The record is not as clear on whether James would be forced to sell his interest in the remaining businesses when he retired, or if he would ever have to sell his interest. Nevertheless, James, who was born in 1969 and was 44 years old when he filed for divorce, indicated that he planned to stay in the Lima community for a long time and there was no indication he would retire soon. There was no testimony at trial that James intended to sell his interest in the businesses at any time in the near future, or at any time prior to retiring.

{¶18} Countering James's evidence that the value of his businesses should be tax-affected, Lisa's expert testified that when he valued the businesses he did not tax-affect them because it is "speculative" and not done as "a general practice." (Oct. 21, 2014, Tr. at 56). Lisa then argued to the trial court in her closing brief that the trial court should not consider the tax consequences since the businesses were not actually being sold.

{¶19} The trial court took the matter under advisement and eventually determined the issue in its decision, which read as follows.

> **The Ohio Revised Code under Section 3105.171(F)(6), requires the Court to consider the tax consequences of the property**

**division upon the respective awards to be made to each spouse.**
**\* \* \***

 **Succinctly stated, it is the position of James Nieman that the Court should take into consideration the fact that there will be some tax consequences associated with the disposition of these assets received by each of the parties at the time the asset is distributed, transferred or dissipated, depending on the nature of the asset and the conversion of the asset.**

 **Lisa Nieman acknowledges the same basic concept as James, however where the parties differ is that Lisa indicates the Court can not [sic] take into consideration, at this time, what those tax consequences may be because it is too speculative to consider the tax consequences at the time the assets would be distributed pursuant to divorce, unless the asset would be liquidated at the same time.**

 **James Nieman basically indicates that at this particular time we are dividing these assets and in essence it is a disposition and we should consider the present financial circumstances of each of the parties and the present tax consequences to each of the parties. James argues this is at this point a distribution, disbursement or transfer of assets between the parties and provides for a known set of economic circumstances and a known and determinable tax calculation as a result.**

 **Under the proposal of James the Court would be able to take into account the tax considerations of the parties in any case, however the considerations and offsets made at this time may in fact not be actually what would occur at the disposal of the asset in the future due to the changing nature of economic conditions for the parties individually or any changing tax code and Lisa's argument would make it impossible to address tax considerations in any case except those cases where there was an immediate disposition of property.**

 **It is this Court's belief that the argument proposed by James is the more considered opinion in this case. Under the**

**statute the Court can determine the current tax consequences and consider the same in distributing the property.**

(Doc. No. 41).

{¶20} Based on this reasoning, the trial court determined that the value of James's businesses should be tax-affected and the trial court valued the business after tax-affecting them as follows: Phy. Org. - $3,105,700, OIO – $77,047, WC Land Development - $66,119.00, Northwest Oil - $52,758 (there was actually a tax loss shown from James's ownership of Northwest Oil, so the trial court kept the value as it was). The total value of the four businesses after tax-affecting them was approximately $3,301,624. Notably, the trial court's reduction in value of the businesses also included two non-compete clauses valued at $100,000 each.[3] However, considering only the tax impact the trial court deducted from the values of James's interest in the businesses, the trial court deducted in excess of $1 million for tax consequences.

{¶21} Lisa now renews her argument on appeal that the taxes in this case were too speculative for the trial court to have considered, pointing us in particular to three other appellate decisions that would suggest taxes in similar circumstances were too speculative. Lisa relies most prominently on *Lewis v. Lewis*, 7th Dist.

---

[3] Along with deducting taxes the trial court also valued James's non-compete clauses and factored those into the valuation. The non-compete clauses for OIO and Phy. Org. were each valued at $100,000. The trial court then applied a tax-rate of 40% to them, and added the remaining $60,000 value to OIO and Phy. Org. to come up with the numbers used above, which are the primary differences between the trial court's tax-affected figures and James's expert's. Although Lisa challenged whether it was proper for the trial court to value James's non-compete clauses at all, she does not assign error to the trial court's inclusion of them on appeal, therefore we will not further address them.

Jefferson Nos. 06JE49, 07JE27, 2008-Ohio-3342, which consisted of a very similar factual situation to the case *sub judice*.[4]  In *Lewis*, the trial court considered the tax consequences of the possible sale of a pharmacy when valuing the pharmacy for a divorce distribution even though the pharmacy was not being sold at the time of the divorce or as a result of the divorce distribution.  *Lewis* at ¶¶ 22-23.  The husband had indicated that he was thinking about retiring after the divorce and that he would likely sell the pharmacy in the near future.  *Id*. at ¶ 23. The trial court found specifically that it was "highly likely that the pharmacy will be sold in the reasonably near future and will generate a taxable event" and thus deducted current capital gains taxes from the value of the pharmacy.  *Id*.

{¶22} In *Lewis* the Seventh District reversed the trial court's decision, finding the sale and the taxes too speculative to be considered by the trial court in valuing the business.  In doing so, the Seventh District engaged in the following analysis, which we quote from at length.

> **[T]he tax consequences in this case are too speculative to support the trial court's decision to try to take them into account in this case.**
>
> **Roger presented the testimony of an expert witness who calculated the tax consequences of a sale if the sale was accomplished under the current tax structure.  However, Roger, a 51 year-old man, has only indicated a general desire to start thinking about selling the pharmacy at some time in the future,**

---

[4] We would note that it does not appear that Lisa's closing brief to the trial court cited *Lewis* or that she made the trial court aware of its existence.

> **not a strong intent to sell the pharmacy within a specific period of time in the near future.**
>
> **The trial court found that the tax consequences of the sale in this case were not speculative because the asset in question was a business, Roger would surely retire someday in the "reasonably near future," and "virtually no one keeps a business" until they die. Essentially, the trial court concludes that a sale is bound to happen at some time and that Roger will incur some kind of tax penalty at that future sale. Therefore, the trial [court] concluded that it was reasonable to take those future tax consequences into account when valuing the business.**
>
> **The problem with this analysis is that the trial court was forced to engage in speculation in order to reach the result. First, it speculated that Roger would sell the business sometime "relatively soon." This speculation was surely built upon some evidence, i.e. Roger's testimony that he was thinking about looking into retiring after the divorce. Nevertheless, the trial court had to speculate that Roger would make the decision to sell. Second, the trial court speculated that the tax consequences when Roger eventually sold the business would be similar to the consequences of selling the business now. There is simply no way to know what the tax consequences of a sale in the non-immediate future will be.**
>
> **Finally, a sale of the pharmacy is not made necessary by the trial court's division of the marital assets. * * ***
>
> **Given these facts, it is simply too speculative to calculate the tax consequences of the eventual sale of the pharmacy at this time. Thus, the trial court abused its discretion when it discounted the value of the pharmacy for the tax consequences of a possible sale sometime in the "reasonably near future."**

*Lewis*, ¶¶ 32-37. The Seventh District then reversed the trial court's decision to tax-affect the pharmacy.

{¶23} *Lewis* thus established in a nearly identical factual situation that taxes are "too speculative" where: [1] it is uncertain if, or at what point in the future, a business will be sold, [2] it is uncertain that the tax rates will be similar in the future, and [3] a sale is not made necessary by the trial court's division of the marital assets.

{¶24} Although slightly less factually on point than *Lewis*, in *Rosenberger v. Rosenberger*, 11th Dist. Geauga No. 2004-G-2555, 2005-Ohio-1790, the Eleventh District Court of Appeals similarly reversed a trial court's decision to tax-affect a business for being too speculative. In *Rosenberger* the trial court determined what the capital gains tax would be for selling a business to a willing buyer in an arm's length transaction and deducted the taxes from the value of the business. *Rosenberger* at ¶ 73. The Eleventh District reversed the trial court's decision to tax-affect the business, holding, "The trial court's consideration of the capital gains tax was inappropriate, as the effect of such tax was based upon pure speculation." *Id*. at ¶ 74. The Eleventh District reasoned that there was no evidence of an intention to sell the business. *Id*. Further, the Eleventh District reasoned that the distribution of assets did not require the appellee to sell his ownership interest in the business to meet the obligations imposed by the trial court. *Id*. The Eleventh District concluded by stating, "[b]ecause there was no evidence of a pending sale of [the business], the [trial] court had no way of

determining the applicable tax rate. Thus, the tax rate applied by the trial court was also speculative." *Id*. at ¶ 75.

**{¶25}** The Eleventh District's decision in *Rosenberger* is consistent with the Seventh District's reasoning in *Lewis*. Although the trial court in *Rosenberger* used the current capital gains tax when tax-affecting the business, the Eleventh District found that using the current rate for a hypothetical future sale was inappropriate. While *Rosenberger* is slightly different from *Lewis* in that there was no evidence in *Rosenberger* that the appellee ever intended to sell the business, *Lewis* found that in a situation where a business owner is contemplating a relatively near, but still unknown, sale date, the evidence was too speculative.

**{¶26}** That the taxes in both *Lewis* and *Rosenberger* were too speculative is further supported by the decision of the First District Court of Appeals in *Thomas v. Thomas,* 171 Ohio App.3d 272, 2007-Ohio-2016, wherein the First District affirmed a trial court's decision finding that tax consequences were too speculative where a spouse was not selling her business and was not forced to sell her business by the distribution of assets. *Thomas* at ¶¶ 8-9. Similarly, this Court determined in *Huelskamp v. Huelskamp*, 3d Dist. Auglaize No. 02-09-21, 2009-Ohio-6864, that tax consequences were "purely speculative" where the trial court did not "order the sale or transfer of any particular asset and, therefore, it did not

affirmatively impose an order that would necessitate a taxable event."[5] *Huelskamp* at ¶ 38; *see also Bauman v. Bauman*, 6th Dist. Erie No. E-01-025, 2002-Ohio-2172, (finding tax consequences speculative due in part to the fact that the trial court's order did not require appellant to liquidate any assets to incur any adverse tax consequences).

**{¶27}** Applying the logic of *Lewis*, *Rosenberger*, *Thomas*, and *Huelskamp* to this case—particularly *Lewis*, which the most factually similar—the taxes here appear to be too speculative for the trial court to have considered. Like *Lewis*, James indicated his desire to sell his businesses at the time of retirement. Also like *Lewis*, any retirement date is uncertain, and in the case of James, it is likely even further distant in the future than it was in *Lewis*.

**{¶28}** Like both *Lewis* and *Rosenberger*, where in both instances the appellate courts reversed a trial court that tax-affected a business, the trial court in this case used the current tax rates, requiring the trial court to engage in speculation to assume that the tax rates will be the same or substantially similar in the future.

**{¶29}** Finally, similar to *Lewis*, *Rosenberger*, *Thomas*, and *Huelskamp*, the distribution of assets did not require James to sell his businesses. Thus based on

---

[5] We would note that in *Huelskamp* we also separately found that the appellant failed to specify what tax consequences may have resulted from a sale.

the holdings of these cases, it would appear that the taxes in this case are too speculative to be considered by the trial court.

**{¶30}** In order to get around *Lewis*, *Rosenberger*, and *Thomas* on appeal, James argues that the cases were simply improperly decided and that they all improperly base their decisions on *Day v. Day*, 10th Dist. Franklin No. 87AP768, 40 Ohio App.3d 155 (1988). In *Day*, the Tenth District was one of the first cases to state that a trial court should consider tax consequences so long as they are not too speculative. However, James argues that since the Tenth District allowed the trial court to deduct future tax consequences from a retirement plan in *Day*, the cases citing to the "speculative" language in *Day*, such as *Lewis* and *Rosenberger* were improperly decided.

**{¶31}** In addition, James cites to a number of cases in his brief where Ohio Appellate Courts have determined that it is not an abuse of discretion for a trial court to consider speculative tax consequences related to *retirement plans*. *See Noll v. Noll*, 55 Ohio App.3d 160 (6th Dist. 1989) ("Whether or not the value of a party's pension and retirement plans which are not immediately terminated should be reduced by estimated future tax consequences on distribution and, if so, by how much, are factors best left to the discretion of the trial court after hearing all the evidence and any expert testimony as to those tax consequences."); *Colley v. Colley*, 10th Dist. Franklin Nos. 09AP-333, 09AP-335, 09AP-336, 2009-Ohio-

6776, ¶¶ 39-40; *Wiggins v. Wiggins*, 12th Dist. Warren No. CA93-05-043, 1994 WL 118991; *but see Fisher v. Fisher,* 3d Dist. Henry No. 7-01-12, 2002-Ohio-1297 ("The tax implications of an individual retirement account cannot be assessed prior to liquidation and therefore any attempts by the trial court to take into account those implications would have been speculative.").  This entire line of cases cited by James, including *Day*, are all related to retirement plans and the majority of them predate the decisions in *Lewis* and *Rosenberger*, therefore we do not find them as persuasive as *Lewis*, which seems to be directly on point and related to business valuation in particular.

{¶32} James next argues that in a more recent case *Foppe v. Foppe*, 12th Dist Warren Nos. CA2008-10-128, CA2009-02-022, 2009-Ohio-6926, the Twelfth District Court of Appeals actually reversed and remanded a case to the trial court with instructions to consider speculative taxes.  However, James misinterprets the *Foppe* decision and the ultimate outcome of the *Foppe* case.

{¶33} In *Foppe*, the trial court interrupted the presentation of testimony related to tax consequences for a business that was not actually being sold.  *Foppe* at ¶¶ 13-25.  The trial court stated that it would not even hear testimony regarding tax consequences for a corporation that was not being sold as they were too speculative.  *Id*.  The Twelfth District reversed the trial court's decision, stating that the trial court had to hear the testimony first and then it could determine

whether the tax testimony was too speculative after learning of the purported tax consequences. *Id*. at ¶ 28. The principle holding of *Foppe* was that a trial court could not determine that taxes were too speculative before even learning what the tax testimony was. *Id*. This is further emphasized by the fact that upon remand, the trial court heard the evidence of the tax consequences and *still determined them to be too speculative. Foppe v. Foppe II*, 12th Dist. Warren No. CA2010-06-056, 2011-Ohio-49, ¶ 20. The trial court's determination after remand was appealed in *Foppe II* and the Twelfth District affirmed the trial court's finding that the taxes were too speculative to be considered. *Id*. Thus any assertion by James that *Foppe I* stands for the proposition that speculative taxes may be utilized in valuing a business is inaccurate.

{¶34} The closest cases James cites to any persuasive authority where a court has considered speculative taxes in valuing a business are two cases from the Twelfth District Court of Appeals that predate *Lewis*, *Rosenberger*, and *Thomas*. The first, *Herrmann v. Herrmann*, 12th Dist. Butler Nos. CA99-01-006, CA99-010-011, 2000 WL 1671045 (Nov. 6, 2000), allowed a trial court to tax-affect a business but it contained language that, "The court's property division, as evidenced by its language, is tantamount to a forced sale of Professor Herrmann's portion of the practice to Dr. Herrmann. Because the property division forces Professor Hermann to dispose of an asset to meet obligations imposed by the

court, the trial court properly considered the tax consequences of that transaction." *Herrmann* at * 8. Thus while the Twelfth District allowed the speculative taxes to be deducted, it based its decision partly on the idea that the distribution was tantamount to a forced sale.[6] The Twelfth District manufactured a "sale" between the parties when distributing the parties' assets, even though no actual "sale" was taking place.[7]

**{¶35}** Similarly, in *Hamilton v. Hamilton*, 12th Dist. Warren Nos. CA2001-01-005, CA2001-01-010, 2002-Ohio-2417, the Twelfth District found again that the trial court "effectively forced [appellant] to sell her interest in the company * * * [t]herefore, the trial court properly considered the tax consequences." *Hamilton* at ¶ 70. In both *Herrmann* and *Hamilton*, the Twelfth District found a factor that pursuant to *Lewis* would make the sale not as speculative, namely that the distribution effectively forced disposal of an asset. Nevertheless, we are not as persuaded by the analysis in *Herrmann* or *Hamilton*, which predate *Lewis*, *Rosenberger*, *Thomas*, and *Huelskamp*.

**{¶36}** Lastly, James attempts to undermine the authority cited by Lisa by pointing to the following language from *Thomas v. Thomas*, 171 Ohio App.3d

---

[6] We would note that the business was not actually being sold in *Herrmann*, however, just that one spouse was "forced" to sell her share to the other spouse.

[7] The Twelfth District's holding in *Herrmann* would seem to imply that potentially every asset being distributed in a divorce action could be subject to speculative tax consequences even where they are not being sold, including houses and vehicles.

272, 274-275, 2007-Ohio-2016 (1st Dist.), which is one of the cases Lisa relies upon.

> **First, we note that in analyzing the issue, the magistrate's report incorrectly stated that "Ohio law * * * does not allow for the deduction of tax consequences on property that is not actually being sold."  But it went on to accurately summarize the law. The court did not, as Robin contends, fail to consider the tax consequences. Instead, it correctly concluded that the tax consequences were speculative.**

*Thomas* at ¶ 7.

{¶37} James argues that the preceding section from the *Thomas* decision made clear that that tax consequences of a property not being sold can actually be considered by the trial court.  Notably, *Thomas* goes on to affirm a finding that the taxes for a business not being sold were too speculative.  Nevertheless, we do not find this language in *Thomas* inconsistent with *Lewis* or *Rosenberger*.

{¶38} What James suggests by citing this particular portion of the *Thomas* decision, and what the trial court seemed to find in this case in its decision on the matter, was that Lisa's position (and the *Lewis* decision) would *never* allow a trial court to tax-affect a business that is not being sold or is not ordered sold to effectuate the trial court's disposition of property.  This is an inaccurate statement. Even under *Lewis* if there was testimony of a sufficiently definite future sale, testimony that the tax rates are not likely to change in that time, and testimony that the tax consequences to the individuals would be the same or similar, the tax

consequences would be much more ascertainable and thus might not be considered too speculative. However, in a case such as this one where there is no indication at what point in the future the businesses may be sold, and no indication that the tax rates will definitely be the same at an *unrecognizable point* many years in the hypothetical future, considering the tax consequences requires too much speculation.

{¶39} By the time James sells his business interests at retirement they could be worth far more, or far less. His percentage share could have grown larger or smaller, or the capital gains tax could rise or could be abolished. As a result, any court would necessarily be required to engage in pure speculation that all of these things will remain relatively consistent in order to impose a present day tax-affect upon the value of the businesses in this case.

{¶40} As we are persuaded by the decisions in *Lewis*, *Rosenberger*, and *Thomas*, we find that the taxes in this case were too speculative to be considered by the trial court. Therefore Lisa's first assignment of error is sustained.

*Second and Third Assignments of Error*

{¶41} In Lisa's second assignment of error, she argues that the trial court erred in its determination of the amount and duration of spousal support awarded to Lisa. In her third assignment of error, Lisa argues that the trial court erred in determining the amount of child support.

{¶42} Our determination of the first assignment of error requires a remand to the trial court to recalculate the value of James's businesses without considering the tax consequences. Recalculating the value of James's businesses will require the trial court to distribute additional assets.

{¶43} The statute for determining spousal support, R.C. 3105.18(C)(1), contains at least one provision that could be relevant depending on how the trial court elects to distribute the previously tax-affected value of the businesses. Specifically, R.C. 3105.18(C)(1)(i) has a trial court take into consideration "[t]he relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties[.]" Given that the asset distribution may change, the trial court may wish to alter the amount of spousal support to reflect that fact. If the amount of spousal support is altered, it would then impact the guideline child support calculation.

{¶44} In order to give the trial court the greatest possible latitude in distributing the parties' assets, we are compelled to find that Lisa's second and third assignments of error are moot based on our disposition of the first assignment of error. In making this ruling we are in no way suggesting that the trial court's current awards of spousal or child support are improper. However, in the interests of giving the trial court as much discretion as possible to reestablish an equitable distribution of all the assets, we find that these issues are moot.

{¶45} For the foregoing reasons Lisa's first assignment of error is sustained and her second and third assignments of error are moot.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, P.J., concurs.**
**WILLAMOWSKI, J., concurs in Judgment Only**

**/jlr**