[Cite as *Nieman v. Nieman*, 2016-Ohio-7169.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

JAMES NIEMAN,

     PLAINTIFF-APPELLEE,          CASE NO. 1-16-22

     v.

LISA M. NIEMAN,               O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. DR20130480

Judgment Affirmed

Date of Decision:    October 3, 2016

APPEARANCES:

    *Andrew S. Grossman* for Appellant

    *Aimee L. Keller* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Lisa Nieman ("Lisa"), brings this appeal from the April 14, 2016 Divorce and Shared Parenting Decree entered by the Allen County Common Pleas Court, which distributed marital assets, awarded spousal support to Lisa, and determined child support upon Lisa's divorce from plaintiff-appellee, James Nieman ("James").

*Relevant Facts and Procedural History*

{¶2} Lisa and James were married December 10, 1994, and had four children together. The children were born in 1995, 1999, 2005, and 2008. The oldest child was emancipated at the time the divorce was filed.

{¶3} James is an orthopedic surgeon employed by the Orthopedic Institute of Ohio ("OIO"). James holds an ownership interest in four businesses related to his practice: OIO itself, Northwest Oil, West Central Land Development, and West Central Ohio Physician's Group.

{¶4} Lisa is a registered nurse and worked for over four years in that position. She has kept current with her certification; however, she has not worked since the children were young.

{¶5} On October 13, 2013, James filed a complaint for divorce alleging that the parties were incompatible and that they had been living separate and apart for

over a year. On October 31, 2013, Lisa filed her answer and a counterclaim for divorce seeking spousal support and child support.

{¶6} The matter proceeded to a final hearing on October 20-21, 2014. Both James and Lisa testified at the final hearing. In addition, both parties called financial experts who valued the parties' substantial assets and testified as to James's income. The parties owned a number of assets that needed to be divided by the trial court in its final decree including, *inter alia*, James's interest in his businesses, the marital residence in Lima, Ohio, a vacation home in Indiana, multiple life insurance policies, multiple bank accounts, various farms containing in excess of 600 acres of farmland, multiple boats, and high-end SUVs. At the conclusion of the hearing the parties elected to submit written closing arguments.

{¶7} On April 2, 2015, the trial court issued a 22-page decision on the matter. In the decision the trial court valued and distributed the parties' assets and debt. The trial court elected to give a precise 50-50 split to Lisa and James, giving each $4,217,180 in marital equity.[1]

{¶8} The trial court also ordered James to pay Lisa spousal support in the amount of $24,000 per month for 57 months. In addition, the court determined that shared parenting was in the best interests of the parties' children and adopted

---

[1] James was awarded $4,289,231 in marital equity and debt and Lisa was awarded $4,145,129 in marital equity and debt. The trial court equalized the distribution by having James pay Lisa half of the difference between the distribution. The difference between the distribution was $144,102, and half of it amounted to $72,051, which James was ordered to pay Lisa to equalize the distribution.

James's shared parenting plan. The trial court then determined child support for the three non-emancipated children, ultimately finding that James should pay $3,814.58 per month total in child support, or $1,271.53 per child, plus a 2% administrative fee.[2]

{¶9} On November 30, 2015, the trial court's decision was reduced to a final judgment.[3] Lisa appealed from that judgment to this Court, arguing that: 1) the trial court erred when it deducted speculative taxes from the value of James's businesses; 2) the trial court abused its discretion in determining the amount and duration of spousal support; and 3) the trial court abused its discretion in determining the amount of child support.

{¶10} In *Nieman v. Nieman I*, 3d Dist. Allen No. 1-15-30, 2015-Ohio-5186, we agreed with Lisa's first argument that the trial court erred in deducting speculative taxes from the value of James's businesses when James's businesses were not actually being sold, it was uncertain at what point in the future they may be sold, it was uncertain what the tax rates might be in the future, it was uncertain what the value of the businesses may be in the future, and the distribution of assets did not necessitate a sale of the businesses. *See Nieman I* (for a complete discussion

---

[2] We have cited the trial court's numbers from its original decision.
[3] The trial court initially issued an entry on April 29, 2015, which Lisa appealed from. However, this entry did not properly incorporate the *subsequently* filed shared parenting decree. On November 10, 2015, this Court issued a stay of the proceedings and the case was remanded to the trial court to issue a proper final appealable order. That order was issued on November 30, 2015.

and analysis of this issue). Thus we determined that the case had to be remanded to the trial court to recalculate the value of James's businesses without considering the speculative tax consequences of a hypothetical sale of those businesses.

{¶11} Because the trial court had to recalculate the value of James's businesses and then distribute any additional marital equity, we did not answer Lisa's remaining assignments of error related to spousal support and child support, allowing the trial court to revisit its calculations for those issues, if it chose to do so, since the trial court would be potentially distributing a substantial amount of additional marital equity.

{¶12} Upon remand, the trial court issued a supplemental decision reevaluating James's businesses without the tax consequences, which added in excess of $1 million in equity that had to be distributed by the trial court. The trial court then divided the marital assets again in a precise 50-50 split, giving each party $4,936,726.50.[4] The primary difference between the initial distribution and the distribution following remand was that Lisa was awarded more of the parties' farmland.

{¶13} The trial court then re-analyzed all of the factors related to spousal support, and kept Lisa's spousal support at $24,000 per month for 57 months.

---

[4] James was awarded $5,002,324 in marital equity and debt and Lisa was awarded $4,871,129 in marital equity and debt. In order to equalize the distribution, the court ordered James to pay Lisa one-half of the difference. The difference in equity amounted to $131,195, so James was ordered to pay Lisa one-half, amounting to $65,597.50.

{¶14} The trial court also re-analyzed child support based on the distribution of the additional assets. The trial court found that due to the fact that Lisa received more farmland in the redistribution of assets following remand, she received more income from that farmland. Lisa would now receive approximately $95,400 annually in income from the farmland, whereas in the original distribution of assets she received approximately $75,500 annually in income from the farmland. As a result, James's child-support figure was reduced to $3,768.09 per month (plus a 2% administrative fee), or $1,256.03 per month per child. This amounted to a difference of $15.50 per child per month, or $46.50 per month total.

{¶15} On April 14, 2016, the trial court's decision was reduced to a final judgment containing its orders. It is from this judgment that Lisa now again appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF CHILD SUPPORT.**

*First Assignment of Error*

{¶16} In Lisa's first assignment of error, she argues that the trial court erred in its determination of the amount and duration of spousal support awarded to Lisa. Specifically, she contends that the trial court erred by "imputing" to her the ability

to earn $48,000 to $50,000 as a registered nurse, that the trial court improperly based spousal support solely on Lisa's needs, and that the duration of spousal support was too short for a 19-year marriage.

{¶17} When awarding spousal support a "trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case." *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67 (1990). Moreover, trial courts are granted broad discretion concerning awards of spousal support. *Id.* Their orders will not be reversed on appeal absent an abuse of that discretion. *Id.* An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶18} Revised Code 3105.18(C)(1) contains a number of factors for a trial court to consider in awarding spousal support, and it reads as follows:

> **(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:**
>
> **(a)   The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**
>
> **(b)   The relative earning abilities of the parties;**
>
> **(c)   The ages and the physical, mental, and emotional conditions of the parties;**

**(d)  The retirement benefits of the parties;**

**(e)  The duration of the marriage;**

**(f)  The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**

**(g)  The standard of living of the parties established during the marriage;**

**(h)  The relative extent of education of the parties;**

**(i)  The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**

**(j)  The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;**

**(k)  The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**

**(l)  The tax consequences, for each party, of an award of spousal support;**

**(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;**

**(n)  Any other factor that the court expressly finds to be relevant and equitable.**

{¶19} In the decision it filed after remand, the trial court individually

addressed each of the factors based on the evidence presented, finding as follows:

(a) **James currently has employment income of [$1,982,449]. * * * Lisa does not have any employment income presently.**

(b) **James is earning in accordance with his abilities, while Lisa is under her earning ability and testimony indicated there would be approximately $48,000.00 to $50,000.00 of earnings should she secure employment with respect to her nursing degree as she is a registered nurse.**

(c) **Each of the parties is of an age and in the appropriate physical, mental and emotional condition to permit each of the parties to be fully employed.**

(d) **The Court has considered all retirement accounts of the parties and the assignment of those benefits to the parties; however, the Court will recognize that James will have a substantially greater opportunity to add to his retirement benefits in the future.**

(e) **This is a marriage of approximately nineteen (19) years.**

(f) **It is not inappropriate for Lisa to work outside the home even though it is noted she is the primary caretaker of the children.**

(g) **These parties had a high standard of living.**

(h) **James is a licensed medical doctor and orthopedic surgeon and Lisa is a registered nurse.**

(i) **The Court has outlined the relative assets and liabilities of the parties. In examining these assets the Court also will consider that Lisa is now also receiving approximately 626.96 acres of farmland, while James is receiving approximately 67.48 acres of farmland.**

**Pursuant to the evidence at [the] hearing, this land has generated an average of approximately $106,000.00 of income and the Court believes [it] would have the opportunity to do the same in the future.**

**This is roughly a ninety percent/ten percent disposition of that land and at those rates, Lisa would have an additional $95,400.00 of income, while James would have an additional $10,600.00 of income.**

**(j)  Neither party contributed to the education of the other party, as the parties married after Lisa had completed her nursing education and James had completed his education, but was ready to commence his residency at that time.  There was no other indication of specific contribution to earning ability, save and except Lisa's indication that she was responsible for the operation of the home, while James was responsible as the income producer.**

**(k)  There was no indication of additional time and expense necessary for Lisa to acquire additional education, training or job experience * * * and there was no further indication that any would be sought by Lisa in the future.**

**(l)  The Court will consider the relative tax brackets and tax consequences of each party with respect to an award of spousal support.**

**(m)  Lisa indicated as a result of her home duties she no longer attempted to work and was in charge of making sure the children were where they needed to be, as well as taking care of the home.**

**(n)  The Court will consider all testimony with respect to the expenses and standard of living of the parties that was exercised during the marriage of the parties.**

(Doc. No. 58).

{¶19} After analyzing all of the factors, the trial court ultimately awarded

Lisa $24,000 per month in spousal support for a period of 57 months.

{¶20} On appeal, Lisa challenges the trial court's spousal support award, contending that it was not enough, arguing first that the trial court erred in its consideration of factor (b) by stating that Lisa had the ability to earn $48,000 - $50,000 annually as a registered nurse. Lisa argues that the trial court had no basis to "impute" this income to her.

{¶21} At the outset, we note that the trial court never "imputed" income to Lisa. The trial court merely stated that Lisa was under-earning relative to her ability as part of its analysis under R.C. 3105.18(C)(1)(b). The trial court explicitly stated later in its decision after remand that it "did not originally impute income to Lisa Nieman, nor will the Court at this point as the facts as originally presented are still the same on remand except for the modification of the property as previously indicated." (Doc. No. 58).

{¶22} Nevertheless, even assuming that the trial court did "impute" income to Lisa in the stated amount, such a finding was supported by the only testimony provided in the record. Lisa had testified that she was a registered nurse prior to quitting to take care of the children and that she had kept current on her certification.[5] She also testified that she had over four years of work experience in that position but that she had ultimately stopped working to take care of the children

---

[5] Lisa did contend, despite being currently certified, she would need additional training to compete in the modern workforce.

-11-

as they grew up. Lisa was born in 1968, and thus was 46 years old when the trial court made its original decision.

{¶23} At the final hearing, James testified that a new registered nurse in the Lima area could expect to start out at $48,000 to $50,000. James is a surgeon and owns multiple businesses related to his practice so his opinion would carry more weight than someone simply guessing at what a registered nurse in this area could make. Nevertheless, even if James's testimony carried very little weight, *no other testimony was presented at all* by Lisa or James as to what Lisa could be expected to earn as a registered nurse should she join the workforce.

{¶24} Moreover, we would also note that James testified that a *new* nurse could expect to start at $48,000 to $50,000. While Lisa has not worked in a long time, she does have over four years of work experience, indicating that perhaps the figure for a "new" nurse is on the low side. As a result, we cannot find that the trial court abused its discretion even if the court had, as Lisa contends, imputed income to her in the amount of $48,000 - $50,000.

{¶25} Lisa next argues that the trial court did not comply with R.C. 3105.18(C)(1) when it determined spousal support because it "appeared to award support based solely on what it consider[ed] to be Lisa's needs." (Appt's Br. at 13). Lisa bases her argument on the idea that although she was ordered to receive a

"sizable amount of money for the vast majority of the world," James was still retaining far more income than Lisa was receiving in spousal support. (*Id.*)

{¶26} Contrary to Lisa's arguments, the trial court analyzed each factor under R.C. 3105.18(C)(1) in its decision and there is absolutely no indication in the record that the trial court based its decision solely on Lisa's "needs." After analyzing *all of the factors*, the trial court explicitly stated that it was awarding spousal support "pursuant to the examination of evidence, as well as specifically the factors hereinbefore enumerated under Ohio Revised Code 3105.18." (Doc. No. 58). The trial court then found that "it [was] reasonable and appropriate for spousal support to be awarded in this case[.]" (*Id.*)

{¶27} The trial court thus not only cited the specific language of R.C. 3105.18(C)(1) that the award was reasonable and appropriate, it specifically stated it examined the evidence and the factors. Moreover, the trial court noted in the factors that it considered the expenses and standard of living of the parties.[6]

{¶28} Lisa left this divorce with exactly half of the substantial marital assets, which included income-producing farmland from which she will be receiving in excess of $95,000 annually. Even if Lisa could not earn $48-50,000 as a registered nurse, she could still supplement her income from the farmland through employment, which the trial court found was "not inappropriate." (*Id.*)

---

[6] There is no statute requiring incomes to be equal following a divorce, so Lisa's argument that James's income was going to be much higher than hers in the foreseeable future holds no merit.

-13-

**{¶29}** In our own review of the record we can find nothing to suggest that the trial court's award of spousal support was too low, and Lisa can point to nothing in the record suggesting the trial court's analysis was inappropriate or that the trial court somehow abused its discretion. Therefore, Lisa's argument that the trial court erred by basing the award solely upon her "needs" is not well-taken.

**{¶30}** Finally, Lisa argues that the duration of spousal support ordered was "excessively short." (Appt.'s Br. at 14). Lisa claims that for a marriage of 19 years a spousal support award of 57 months was not long enough. Lisa cites no cases convincing us that a 57-month spousal support award would be inappropriate for a 19-year marriage, particularly given the amounts and factors of R.C. 3105.18(C)(1) applied by the trial court in this case. For all these reasons, Lisa's arguments are not well-taken, and her first assignment of error is overruled.

*Second Assignment of Error*

**{¶31}** In her second assignment of error, Lisa argues that the trial court erred in determining the amount of child support. Specifically, Lisa argues that the trial court should have extrapolated from the guideline child support to accommodate the children's standard of living.

**{¶32}** Matters involving child support are reviewed under an abuse-of-discretion standard. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 9 (2013), citing *Pauly v. Pauly,* 80 Ohio St.3d 386, 390 (1997).

{¶33} Lisa argues on appeal that in setting child support the trial court gave "no consideration to the standard of living enjoyed by the children or the parents during the marriage." (Appt.'s Br. At 16). This statement is inaccurate both before and after the remand.

{¶34} Both before and after remand, the trial court calculated guideline child support based on the worksheets then *added* $30,000 to the total annual child support amount *specifically to account for the children's standard of living*. The court made this upward deviation from the guideline child support amount based on the following reasoning. "The Court further would find a deviation is appropriate as indicated in that the evidence demonstrated an overall spending pattern of an additional $30,000.00 per year for the children[.]" (Doc. No. 58). Thus the trial court explicitly accounted for the high standard of living enjoyed by the children.

{¶35} Furthermore, the amount that was added to the child support *more than doubled* James's annual support obligation under guideline support. The trial court thus explicitly took into account the children's standard of living with a substantial increase in the child support, and for Lisa to suggest otherwise is inaccurate at best and disingenuous at worst. Therefore, Lisa's argument on this issue is not well-taken.

{¶36} As we can find no error or abuse of discretion with the trial court's calculation of child support, Lisa's second assignment of error is overruled.

Case No. 1-16-22

{¶37} Having found no error prejudicial to Lisa in the particulars assigned, her assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**